[No. 5938.]

GRAVES ET AL. v. DAVENPORT.

1. **Personal Property—Purchase — Prior Sale —** A purchase from one K. of all animals bearing his brand, does not give title to the offspring of a mare which K. had previously sold, and which, at the date of the purchase, was not in K.'s possession.—(272)

2. **Statute of Frauds—Sale of Chattels—Who May Question** —One who is neither the purchaser of an animal, nor the creditor of the one who sells it, cannot object that a purchase asserted by another was not accompanied by a change of possession.—(273)

3. **Appeals—What May Be Assigned for Error —** Appellant will not be heard to complain of an instruction which accords with his own contentions in the court below.—(273)

Nor of an instruction to the whole of which he excepted, and which contains one provision sound in law as to him.—(273)

Nor of the refusal of an instruction which is inapplicable to the facts presented upon the trial.—(273)

4. **Statute of Limitations—Pleading —** The statute must be specially pleaded in replevin.—(274)

5. **Administration—Unnecessary—**There is no necessity for administration upon the estate of one who owes no debts. The heir may recover a chattel pertaining to the estate, though there has been no administration.—(274)

*Appeal from Pueblo District Court*—Hon. JOHN H. VOORHEES, Judge.

Mr. JAMES F. DRAKE, for appellant.

No appearance for appellee.

Mr. JUSTICE MUSSER delivered the opinion of the court:

This is an action for claim and delivery of a horse. The appellants were defendants below. About six or seven years before the commencement of the action, the minor son of plaintiff worked for one Krensky. At that time, Krensky owned a mare that was running in the pasture of one Sease. This

mare bore Krensky's brand, was wild, and had wandered into this pasture, where it remained for many years. Krensky, with the consent of the boy's father, made an arrangement whereby the boy was to have this animal and pay the purchase price in work. The appellants claim that the title was not to pass to the boy until the purchase price was paid, and the animal caught and removed from the pasture. A part of the purchase price may not have been paid by the boy, and there was some evidence that, after the boy's death, plaintiff offered to pay to Krensky the amount unpaid, if any, and that Krensky said he had no further claim. There was much testimony that indicated that the passing of title to the boy was not dependent upon the payment of the purchase price, or the performance of any condition. The matter of conditional or unconditional sale was submitted to the jury under proper instructions. As the jury from sufficient evidence found against appellants, their claim that the plaintiff cannot recover, because the contract of sale was not executed, must fail. The animal in controversy is the offspring of the animal obtained by the boy from Krensky, and was foaled after the purchase of the dam by the boy, and about five years before the commencement of the action. The boy died, a minor, without issue and unmarried, about three years before the action was commenced, and after the death of his father. The plaintiff is the sole heir of the boy. There was no administration. He left no estate except the animal in controversy, and no debts, so far as appears from the record, unless a portion of the purchase price to Krensky remained unpaid. The animal in controversy grew up and remained in Sease's pasture, away from any other of Krensky's animals. It was wild, unbroken and not branded.

There was evidence that its dam was generally known as "the Davenport mare," after the purchase by the boy. The dam died before the commencement of this action, and before the sale from Krensky to appellants, hereinafter mentioned. According to the testimony of Krensky and appellant Graves, before the commencement of this action, Krensky sold to appellants all horses bearing Krensky's brand. After the purchase from Krensky, the appellants were informed that this animal was an offspring of an animal that had borne Krensky's brand, and though they did not know of the existence of this animal at the time of the purchase from Krensky, and though its dam was long since dead, and it was not branded nor in Krensky's possession or with any of his animals, they claimed the animal, and took possession of it.

This claim of appellants to this animal bears upon its face its own refutation. The appellants did not purchase it.

Appellants assign many errors. They first say that there is a fatal variance between the proof of the animal in controversy and the description thereof given in the complaint. The description of the animal testified to by some of the witnesses may be different from the description given in the complaint, while the testimony of other witnesses is substantially the description contained in the complaint. However, the jury were, without objection, permitted to view the animal in controversy at the close of plaintiff's case, and as the jury, after viewing the animal, were satisfied, it is not for this court to interfere with their verdict on the ground of variance.

The appellants also claim that there was no actual and continued change of possession from

Krensky to the boy, and hence the sale was fraudulent and void as to them, under § 2027 of 1 Mills' Ann. Stats., which provides that, unless there is an immediate delivery and an actual and continued change of possession to the vendee, the sale is presumed to be fraudulent and void as against creditors of the vendor and subsequent purchasers in good faith. Krensky was not in possession of this animal, and, as the appellants were neither creditors of Krensky, nor, as we have seen, purchasers of this animal from him, the statute does not apply.

Appellants object to instruction 5 given by the court. This instruction told the jury that, if the sale from Krensky to the boy "was conditional, that no title was to pass until the horse was actually taken into possession and until the same was paid for in full, the plaintiff could not recover in this action." This is what the appellants contended for at the trial, and, in substance, they asked the court to so instruct. They cannot now complain.—*Little Dorrit G. M. Co. v. Arapahoe G. M. Co.*, 30 Colo. 431.

It is true instruction 5 contained another and distinct proposition, but the exception was general, and directed to the whole instruction. As one proposition was right, so far as appellants are concerned, they can not be heard to complain.—*Hasse v. Herring*, 36 Colo. 383.

Appellants complain of the refusal of the court to give requested instructions numbered 6, 7 and 8. Number 6 related to section 2027, Mills' Ann. Stats., number 7 to the branding of animals, and number 8 to the question of good faith. In our view they were inapplicable, and the refusal could not prejudice the defendants. They also complain of the refusal to give requested instructions numbered 2 and 3. Number 2 related to the law of

emancipation of infants, and number 3 requested the court to instruct relative to the statute of limitations, by reason of this emancipation. The answer was a general denial. This court has repeatedly declared that, in actions like this, if it is desired to invoke the bar of a statute of limitation, that statute must be specially pleaded.

Appellants contend that plaintiff ought not to recover, because there was no administration of the boy's estate. What need was there for administration in this case? No creditor is making any claim. With administration, the plaintiff would have the horse or its value, less the costs of administration; without administration, plaintiff would have the horse or its value without diminution. In the light of the authority of *Waterhouse v. Churchill,* 30 Colo. 415, it is clear that, under the special facts and testimony in this case, the plaintiff could maintain this action.

It therefore follows that appellants are wrong when they say the court erred in giving instruction 3, which stated the law of descent applicable to this case, and instruction 4, which told the jury that plaintiff must prove that her boy was the owner of the horse or entitled to its possession at his death.

The jury valued the horse at $75.00. Appellants object to this. The objection is without merit. Witnesses, without objection, were allowed to testify to the value. Their estimates varied. Some mentioned seventy-five dollars, and the jury so found.

As no meritorious assignment of error is made, the judgment will be affirmed.        *Affirmed.*

CHIEF JUSTICE STEELE and Mr. JUSTICE CAMPBELL concur.